IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FEDERICO DIMAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-1355 (RDA/LRV) |
| | ) | |
| MERRICK GARLAND, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant U.S. Department of Justice ("DOJ")/U.S. Drug Enforcement Agency's ("DEA") Motion to Dismiss all Counts of Plaintiff's Complaint ("Motion"), Dkt. 17, and Motion for Summary Judgment, Dkt. 18. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with Defendant's Memorandum in Support (Dkt. 19), Plaintiff Federico Dimas, Jr.'s Opposition (Dkt. 32), and Defendant's Reply (Dkt. 34), the Court grants the Motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Federico Dimas Jr. alleges five counts against his employer, Defendant DOJ/DEA, in violation of Title VII of the Civil Rights Act of 1964: (1) discrimination against Plaintiff on the

[1] This Court accepts all facts alleged within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

basis of his race and color; (2) discrimination against Plaintiff on the basis of his national origin; (3) discrimination against Plaintiff on the basis of his sex/gender; (4) hostile work environment on the basis of race, sex, and gender; and (5) retaliation on the basis of prior Equal Employment Opportunity ("EEO") activity.  Dkt. 1 ¶¶ 117-75.

Plaintiff is a Hispanic man of Mexican descent.  *Id.* ¶ 120.  Plaintiff started working for the DEA on August 15, 1999 as a GS-13, Level 1 Computer Specialist in the Office of Security Programs in Arlington, Virginia.  *Id.* ¶ 5.  From 2004 to 2017, he advanced to Step 10 at the GS-13 level.  *Id.* ¶ 8.  Plaintiff has filed three previous EEO complaints with the EEOC alleging discrimination based on race, gender, and national origin, and retaliation, two of which were *pro se* before the final EEO complaint, which led to this suit.  *Id.* ¶ 14-17.  Plaintiff's immediate supervisor at the time that he filed his previous EEO complaints was Thomas G. Gregg III, the DEA's Acting Unit Chief Inspector and a Caucasian male.  *Id.* ¶ 9.  According to Plaintiff, during his tenure at the DEA, Plaintiff was denied every promotion that he applied for while Caucasian agency employees were promoted.  Plaintiff alleges that the most recent instance occurred on September 29, 2021.  *Id.* ¶ 20, 45.  Plaintiff asserts that his annual performance ratings were "excellent" or "outstanding" each year.  *Id.* ¶ 25.

Plaintiff's claims primarily arise from events that occurred after a meeting between his wife and his supervisors.  On March 1, 2016, Plaintiff checked himself into the Fort Belvoir Hospital Emergency room due to back pain after a half-day at work.  *Id.* ¶ 64.  While Plaintiff was at the hospital, his wife, Ms. Dimas, met with Plaintiff's supervisors.  *Id.* ¶ 67.  Plaintiff had no knowledge of Ms. Dimas' visit.  *Id.*  Ms. Dimas spoke with Gregg and Plaintiff's other supervisor at the time, Mike McCormick, expressing concerns regarding Plaintiff's marital affairs.  *Id.* ¶ 69.

After that encounter, on March 7, 2016, Gregg asked Plaintiff to go to DEA headquarters and speak with McCormick. *Id.* ¶ 75. Before Plaintiff entered the building, his Personal Identity Verification ("PIV") badge access was deactivated, and his cassette recorders were seized. *Id.* ¶ 76-77. McCormick and Richard D. Bendekovic, the DEA's Associate Deputy Chief Inspector, gave Plaintiff a memorandum enrolling him into a voluntary "Employee Assistance Program." *Id.* ¶ 79-81. Plaintiff signed the memorandum after he was told that there would be no disciplinary action taken against him based on his use of sick leave without notice. *Id.* ¶ 83. During this conversation, Plaintiff was not asked to confirm or deny his wife's allegations. *Id.* ¶ 87-88.

On February 3, 2017, Plaintiff received a notice of a fourteen-day suspension without pay by the Office of Professional Responsibility ("OPR"). *Id.* ¶ 47. After Plaintiff challenged the suspension, it was reduced to eleven days without pay. *Id.* Plaintiff alleges that after a FOIA request, he discovered that the reasoning behind his suspension was lies about his marital life including "matters concerning infidelity and sexual intercourse, that his wife told Gregg, McCormick, and Bendekovic." *Id.* ¶ 95. Plaintiff also alleges that his superiors falsely reported, that based on Ms. Dimas' allegations, Plaintiff had electronically recorded his telephone conversations with his wife. *Id.* ¶ 103.

Although Plaintiff and his wife separated on February 14, 2016, she had visited Plaintiff's superiors on two separate occasions between February and March 2016. *Id.* ¶ 100. Further, a Juvenile and Domestic Relations Court in Virginia, had on Plaintiff's request, issued two separate protective orders against his wife. *Id.* ¶ 102. Plaintiff alleges that, although issues between him and his wife were private matters, McCormick contacted Assistant United States Attorneys ("AUSAs") to investigate his wife's allegations that Plaintiff had recorded her phone conversations. *Id.* ¶ 104-05. Plaintiff claims that his superiors, McCormick and Bendekovic, used

these circumstances to retaliate against Plaintiff because of his prior EEO activity. *Id.* ¶ 106. Moreover, Plaintiff's FOIA request revealed that Gregg reported to the OPR that Plaintiff had left work without prior approval of a supervisor. *Id.* ¶ 109. Plaintiff alleges that this was false because Gregg certified Plaintiff's time-sheet summary himself, which stated that he had worked for eight hours on the date specified. *Id.* Before this accusation, Plaintiff never had attendance issues and all of his sick leave requests had been granted. *Id.* ¶ 110.

In addition to these specific alleged instances of unlawful conduct, Plaintiff also avers that his supervisors subjected him to a hostile work environment and intentionally promoted Caucasian employees instead of him because of Plaintiff's national origin, color, race, and gender. *Id.* ¶¶ 121-27, 138-42, 148-57.

B. Procedural Background

Plaintiff filed a charge of discrimination with the EEOC and, based on his uncontested representations, received a Notice of Right to Sue from the DOJ on July 22, 2021. Dkt. Nos. 1 ¶ 14; 1-5. On October 21, 2021, Plaintiff filed the instant Complaint in the United States District Court for the District of Columbia. Dkt. 1. On April 8, 2022, Defendant timely filed a Motion to Dismiss and a Memorandum in Support, seeking to dismiss all Counts of Plaintiff's Complaint for improper venue, untimely filing, and failure to state a claim. Dkt. 9. Plaintiff filed his Opposition to the Motion to Dismiss on May 13, 2022. Dkt. 11. The United States District Court for the District of Columbia granted Defendant's Motion in part and ordered Plaintiff's case transferred to this District. Dkt. 15. On March 20, 2023, Defendant filed a Motion to Dismiss in this Court for Failure to State a Claim (Dkt. 17), a Motion for Summary Judgment (Dkt. 18), and a Memorandum in Support of its Motion to Dismiss and Motion for Summary Judgment in this Court (Dkt. 19). On April 3, 2023, Plaintiff filed his Opposition to the Motion to Dismiss (Dkt.

32) and on April 10, 2023, Defendant filed a Reply in support of its Motions and in response to Plaintiff's Opposition (Dkt. 34).

II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in

evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

III. ANALYSIS

Defendant argues that Plaintiff's apparent Title VII claims are time-barred because the Complaint was not filed in this Court within 90 days after receipt of the DOJ's Final Agency Decision concerning Plaintiff's EEO complaint on July 22, 2021. 42 U.S.C. § 2000e-16(c).

The 90-day time-limit "begins when either the plaintiff or the plaintiff's attorney received the right-to-sue letter." *Dyson v. Henrico Cty. Sch. Bd.*, No. 3:20CV547, 2020 WL 7398836 at *4 (E.D. Va. Dec. 16, 2020). "[I]f the actual date of receipt is confirmed by evidence, that date governs." *Nguyen v. Inova Alexandria Hospital*, 187 F.3d 630, 1999 WL 556446, at *3 (4th Cir. 1999) (Table Decision). Final agency decisions transmitted via email can satisfy the notice requirement. *Stewart v. Johnson*, 125 F. Supp. 3d 554, 560 (M.D.N.C. 2015). "The timing requirements for filing a lawsuit following an EEOC right-to-sue notice have been strictly construed." *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003). Missing the deadline by even one or two days is sufficient to bar a plaintiff's claims. *See, e.g.*, *Harvey v. City of New Bern Police Dep't*, 813 F.3d 652, 654 (1987) (applying time-bar to complaint filed one day late); *Bowie v. Univ. of Md. Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *8 (D. Md. Mar. 31, 2015) (same).

Plaintiff acknowledges that he failed to timely file his Complaint but contends that his error may be excused under equitable tolling principles. Dkt. 32 at 17-18. Federal courts extend equitable relief sparingly. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *see also Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir. 1990) (noting that "[e]quitable tolling is a narrow limitations exception"). To be entitled to equitable tolling, Plaintiff must show that

"some extraordinary circumstance stood in [Plaintiff's] way" and prevented him from timely filing his complaint. *Crabhill v. Charlotte Mecklenburg Bd. of Educ,* 423 F. App'x 341, 321 (4th Cir. 2011). Under these equitable tolling standards, a plaintiff can successfully demonstrate that an extraordinary circumstance stood in the way from timely filing the complaint if a complainant presents sufficient evidence of circumstances "beyond [his] own control or external to [his] own conduct . . . that prevented [him] from filing on time." *Id.*

The Fourth Circuit has held that actions or omissions by a federal agency may justify equitable tolling under appropriate circumstances. *See e.g.*, *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 92 (4th Cir. 1982) (permitting tolling where the plaintiff promptly filed his charge with the EEOC but, because the EEOC lost his file due to a burglary, certain deadlines applicable to "deferral states" were not met). However, where the plaintiff or plaintiff's counsel is at least partly responsible for the delay and fails to explain how the conduct amounted to an extraordinary circumstance, tolling is generally not permitted. *See e.g.*, *U.S. v. Williams,* No. 3:07CR123-HEH, 2011 WL 6842991, at * 2 (E.D. Va. Dec. 29, 2011) (holding that equitable tolling did not apply to a claimant in the hospital because "he fail[ed] to explain how his medical condition was so debilitating . . . as to prevent him from filing"); *Miller v. Rosenker*, 567 F. Supp. 2d 158, 161 (D.D.C. 2008) (declining to apply equitable tolling where *pro se* plaintiff noted that his filing was ready to be mailed on the applicable date, but the post office had already closed when he went).

Additionally, to justify equitable tolling, a plaintiff must account for the time within the ninety-day limitations period that was not spent dealing with an extraordinary circumstance. *See Blakes v. Gruenberg*, No. 1:14-CV-1652-GBL/IDD, 2015 WL 9274919 (E.D. Va. Dec. 18, 2015) (finding equitable tolling was inappropriate where plaintiff had 73 days outside of the extraordinary circumstance to file suit); *see also Watts-Means v. Prince George's Family Crisis*

*Ctr.,* 7 F.3d 40, 42 (4th Cir. 1993) (holding that equitable tolling was inappropriate where plaintiff had 85 days outside of the extraordinary circumstance to file his complaint); *Harvey v. City of New Bern Police Dep't,* 813 F.2d 652, 654 (4th Cir. 1987) (holding that equitable tolling was inappropriate where plaintiff had 84 days outside of the extraordinary circumstance to file his complaint).

Simply put, Plaintiff is not entitled to equitable tolling. Here, Plaintiff received his right to sue letter on July 22, 2021. Dkt. 1-5. Thus, the 90-day tolling date after receipt of the right to sue letter was Wednesday, October 20, 2021. Plaintiff filed his Complaint on Thursday, October 21, 2021. Dkt. 1. Plaintiff's counsel alleges that he had issues with the credit card payment process during filing and other "coincidental" deadlines that increased his workload causing a nineteen-minute delay in filing. Dkt. 32 at 17-18. During the 90-day period, Plaintiff's case was the last of his counsel's many work deadlines, and Plaintiff's counsel waited until the end of the last day to file it. *Id.* Further, Plaintiff's counsel alleges that he had prior deadlines that could not be changed without incurring additional costs for his other clients. Dkt. 32-18 at 14. Courts have found that even more severe circumstances did not warrant equitable tolling. For example, in *Williams*, a plaintiff failed to timely file his complaint arguing the untimeliness was due to his medical condition. *Williams,* 2011 WL 6842991, at *2. The court found that equitable tolling was not warranted because the plaintiff did not explain how his alleged medical condition impacted the filing of his complaint. *Id.* Like in *Williams*, where the plaintiff failed to explain how his medical condition was so debilitating as to cause a delay in filing, here, Plaintiff fails to explain *how* his counsel's workload was so debilitating that his Complaint could not be timely filed. *Id.* Plaintiff, through his counsel, also does not establish how both the credit card processing issues and the heavy workload were beyond Plaintiff's control.

Moreover, Plaintiff fails to account for the time that counsel was not exposed to the alleged extraordinary circumstance. In *Blakes*, a plaintiff filed her complaint more than ninety days after she received her right to sue letter but argued that she was entitled to equitable tolling due to her counsel's family emergency. *Blakes*, 2015 WL 9274919 at *7. The court in *Blakes* found that equitable tolling was not warranted because plaintiff's counsel had 73 days outside of the alleged extraordinary circumstance to file the complaint and did not show that she had insufficient time to bring the suit. *Id*. Like in *Blakes,* Plaintiff's claim of equitable tolling is not satisfied because Plaintiff has not demonstrated that there was insufficient time to file Plaintiff's Complaint given that Plaintiff's counsel did not experience credit card issues and a heavy workload until October 20, 2021. *Id.* The timeline suggests that Plaintiff had at least 85 days or more to file his Complaint with this Court. Similarly, in *Watts-Means*, the Fourth Circuit found that equitable tolling was inappropriate when the complainant had 85 days outside of the alleged extraordinary circumstance to file. *Watts-Means*, 7 F.3d at 42. Therefore, like *Watts-Means*, equitable tolling is inappropriate here because Plaintiff had sufficient time to file suit. *Id.*

Accordingly, Plaintiff's EEOC claims (Counts I-V) are dismissed with prejudice as untimely.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 17) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Dkt. 18) is DENIED as MOOT.

The Clerk is directed to close this case and to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
October 26, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge